**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa St. Clair and Richard Poulin, as parents and natural guardians of HP, a minor child,<br><br>  Plaintiffs,<br><br>vs.<br><br>Nellcor Puritan Bennett, LLC, a Delaware Limited Liability Company,<br><br>  Defendant. | No. CV-10-1275-PHX-LOA<br><br>**ORDER** |

Before the Court is Defendant Nellcor Puritan Bennett, LLC's ("Nellcor") Motion for Extension of Time to Serve Reports for Non-Retained Expert Witnesses, filed on February 25, 2011. (Doc. 38)  The Motion requests "the Court extend the deadline for Nellcor to serve non-retained expert witness reports until thirty (30) days after examining the resuscitator bag and thirty (30) days after taking the deposition of plaintiffs' retained expert David Eckmann[.]" (*Id*. at 1)  Because timing is critical at this stage of the case, the Court denied the motion on March 9, 2011, indicating a formal order would follow. (Doc. 43) This is that order.

After considering the briefing and file as a whole, the Court finds that Nellcor has failed to demonstrate good cause and the exercise of due diligence to comply with the expert disclosure deadline to warrant modification of the firm Rule 16 deadlines. Nellcor's motion is denied.

## I. Background

This products liability diversity action was removed on June 16, 2010 from the Superior Court of Arizona, Maricopa County. (Doc. 1) Suit was initially filed on August 7, 2009, against six corporate defendants, including Nellcor which was served three days later on August 10, 2009. (Doc. 1-2 at 21; doc. 1-4 at 2) The First Amended Complaint was filed on August 20, 2009. (Doc. at 169-176) Nellcor answered on October 7, 2009. (*Id*. at 83-93; doc. 1-4 at 2) It appears from the State record that meaningful discovery was conducted by the various parties before Plaintiffs voluntarily dismissed all defendants except Nellcor in the State action on or about June 3, 2010. (*Id*. at 201-203)

The parties' August 20, 2010 Second Amended Joint Case Management Report provides a summary of the parties' claims. While Plaintiffs' three-year old child, H.P., was recovering from surgery at Phoenix Children's Hospital ("PCH"), H.P.'s healthcare providers utilized an allegedly defective resuscitator bag manufactured by Nellcor, without realizing that it was not functioning properly. (Doc. 28 at 2) As a consequence, Plaintiffs contend H.P. suffered a thirteen minute deprivation of oxygen, leaving her permanently and severely brain injured. (*Id*.) Plaintiffs assert product liability and negligence claims against Nellcor arising from the design, manufacture, and sale of the allegedly defective resuscitator. Nellcor denies its resuscitator bag was defective and contends that Nellcor's conduct was reasonable and appropriate and that the resuscitator bag used on H.P. did not cause or contribute to the injuries and damages claimed by Plaintiffs. (*Id*.)

Relevant to Nellcor's Motion for Extension of Time to Serve Reports for Non-Retained Expert Witnesses is information contained in the State record. According to Plaintiffs, counsel learned by letter, dated December 7, 2009, from counsel for Phoenix Children's Hospital "(who presently maintains custody of the subject resuscitator bag )" that the actual resuscitator bag involved in H.P.'s September 13, 2007 incident was allegedly "a single-patient use pediatric flat bag mask PEEP PBMV, lot number 7141147, manufactured and sold by Nellcor []." (Doc. 1-2 at 155; Exhibit ("Exh") C, at 178) This information is reflected in Plaintiffs' motion for leave to file a second amended complaint, filed on April

- 2 -

1 26, 2010. (*Id*. at 153-158) The amendment motion indicates that at the then recent 2 depositions of PCH employees, counsel "was able to inspect the bag involved in the 3 incident." (*Id*. at 155)  Plaintiffs contend that "defendants were likely aware of this issue 4 [misidentification of the wrong resuscitator bag involved in H.P.'s incident] before it was 5 discovered by the Plaintiffs." (*Id*. at 156) The Court assumes, without knowing for certain, 6 that Nellcor's lawyers were also present at these depositions of PCH's employees and 7 examined the correct resuscitator bag. Most certainly, however, two of Nellcor's counsel 8 were endorsed on Plaintiffs' amendment motion, and one was endorsed on the December 7, 9 2009 letter from PCH's counsel. (*Id*. at 158; Exh C at 178)  Plaintiffs' amendment motion 10 was granted on May 21, 2010. (*Id*. at 192-193) Plaintiffs voluntarily dismissed all defendants 11 except Nellcor in the Maricopa County Superior Court action on or about June 3, 2010. (*Id*. 12 at 201-203) The lawsuit was removed to this District Court shortly thereafter.

13 At the August 23, 2010 scheduling conference, the Court informed counsel that 14 it would give great weight to the deadlines counsel wanted within reason. It was made plain 15 to counsel, however, both verbally and in the Court's subsequent order that once the 16 deadlines were agreed upon and established, the "deadlines in the scheduling order were 17 **real, firm**, and, consistent with the undersigned's responsibilities mandated by Congress in 18 the Civil Justice Reform Act of 1990, 28 U.S.C. § 471 *et seq*., **will not be altered** except 19 upon a showing of good cause and by leave of the assigned trial judge." (Doc. 29 at 4) 20 (emphasis in original; footnote omitted). The scheduling order makes clear that in the Ninth 21 Circuit, the Rule 16 deadlines are "to be taken seriously," citing *Janicki Logging Co. v.* 22 *Mateer*, 42 F.3d 561, 566 (9th Cir. 1994). (*Id*.)  Further, counsel were informed orally and 23 in writing that "[t]he Court intends to enforce the deadlines in this Order. Counsel should 24 plan their litigation activities accordingly." (*Id*.)

25 With the firmness of the prospective deadlines patent and counsels' active 26 involvement in setting them, the Court fashioned mutually agreed-upon deadlines for the fair 27 and reasonably expeditious resolution of this case. The scheduling order mandates, among 28 others, that Plaintiffs' expert disclosures will be made by **Friday, January 7, 2011**; Nellcor's

- 3 -

expert disclosures "(regardless of whether such expert witness has or has not been specifically retained for this case, such as, if the expert is an employee of [Nellcor])" will be made by **Friday, February 25, 2011**; Plaintiffs' true rebuttal expert disclosures by **Friday, March 25, 2011**; supplementation of all discovery pursuant to Rule 26(e), Fed.R.Civ.P., by **Friday, April 29, 2011**; completion of all discovery by **Tuesday, May 31, 2011**; and filing of dispositive motion(s) by **Thursday, June 30, 2011**. (*Id*. at 5-6) (emphasis in original).

Nellcor's Motion confirms that Plaintiffs timely "served 11 expert reports from retained experts and a cover letter identifying various treating physicians as expert witnesses." (Doc. 38 at 2) Nevertheless, Nellcor requests an extension of the deadline for the disclosure of its *own employee*, non-retained experts and reports "until thirty (30) days after examining the resuscitator bag and thirty (30) days after taking the deposition of plaintiffs' retained expert David Eckmann[.]" (*Id*. at 1) Nellcor claims that it is "unable to timely provide written reports from" Roger Mecca, M.D., VP of Medical Affairs, and Stan Kaus, a Sustaining Engineer, both Nellcor employees. Nellcor vaguely claims that "[t]he examination of the subject resuscitator bag is currently scheduled to take place on a date to be determined prior to April 30, 2011 by agreement of counsel." (*Id*. at 2) Even if a stipulation alone could modify a Rule 16 scheduling order, which it cannot, no written stipulation is provided the Court regarding a date for the bag's inspection nor is an explanation given why Nellcor's employees could not have examined the resuscitator bag earlier in this case. Nellcor criticizes one of Plaintiffs' experts, Dr. David Eckmann, whose report allegedly "raises only general criticisms of the design, manufacturing and testing of the subject resuscitator bag, but does not sufficiently detail his general criticisms in a manner that allows for a meaningful written response." (*Id*. at 3)

Plaintiffs' Response denies Nellcor's criticism of Dr. Eckmann's report and that a date was currently scheduled for Nellcor's employees to examine the resuscitator bag.[1]

---

[1] Plaintiffs' Response was not properly filed in electronic, text-searchable format, contrary to the District Court's Local Rules, LRCiv 7.1(c). This non-compliance will be

1 (Doc. 39 at 3) Plaintiffs claim that Nellcor "raised this issue in late February [2011], and
2 Plaintiffs promptly requested that the defense provide proposed dates for this examination,
3 but Plaintiffs have not received any specific date when this examination is to take place."
4 (*Id.*) Attorney Tanner, Plaintiffs' out-of-district counsel, explained that he is lead counsel
5 in a three-week trial, will be out of the country during the last two weeks of March, and
6 "desires to be present if this critical evidence is examined." (*Id.*) This response suggests it
7 will be, at least, April before the various individuals and conditions can be met before the
8 lawyers and Nellcor's employees may examine the bag. Plaintiffs write that they do not
9 oppose Nellcor's request for extension if "Plaintiffs receive reciprocal extensions of time to
10 complete the remaining discovery and assembly of rebuttal information." (*Id.* at 3-4)
11 "However, in the absence of such a reciprocal extension of time, this extension will prove
12 prejudicial to Plaintiffs, and Plaintiffs have no choice but to oppose it." (*Id.*)

13 Nellcor's March 7, 2011 Reply indicates that this lawsuit is "being handled by
14 experienced trial counsel" who " recently exchanged dates and compared schedules and have
15 determined that the week of April 18, 2011 will allow the best opportunity to conduct both
16 the device examination and the examination of HP in Phoenix, Arizona." (Doc. 42 at 1-2)
17 "Nellcor requests May 6, 2011 as the operative deadline for the parties to serve expert reports
18 arising out of the inspection of the device . . . [and] May 20, 2011 as the operative deadline
19 for either party to serve a rebuttal report in response to expert reports arising out of the
20 inspection of the device." (*Id.* at 2) Nellcor's proposed May 20, 2011 deadline for the parties
21 to serve a rebuttal report would leave a mere 11 days for the *completion* of all discovery,
22 including, of course, the scheduling and taking of expert rebuttal depositions. Disclosure this
23 late will most likely require the Court to modify the scheduling order again and, perhaps,
24 re-open discovery, rather than focusing on dispositive motions or setting this case for a final
25 pretrial conference and trial. Such multiple modifications to the Court's and parties'
26 schedules diminish the importance of the initial scheduling order and may support a finding
27 _____
28 addressed at the end of this order.

- 5 -

1   that the failure to timely disclose expert witnesses was not harmless. *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to. The district court did not abuse its discretion here in refusing to permit Wong to supplement his disclosure with the additional expert witnesses and in barring testimony by and relying upon those witnesses.").

**II. Good Cause and Rule 16**

Federal Rule of Civil Procedure 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). A district court may modify the pretrial schedule "if it cannot reasonably be met despite diligence of the party seeking the extension." *Id.* at 608; Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment). "Good cause" means the Rule 16 scheduling deadlines cannot be met despite the party's diligence, citing Miller & Kane, *Federal Practice and Procedure* § 1522.1 at 231 (2d ed. 1990). *Id.* "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Soto v. Greyhound Lines, Inc.*, 2010 WL 457351, * 1 (E.D.Cal., Feb. 3, 2010). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.*

**III. Discussion**

The requisite good cause for extending Nellcor's non-retained expert disclosure and report deadline has not been shown. The docket reflects that Nellcor knew, at least, as early as PCH's December 7, 2009 letter, of the type and lot number of the resuscitator bag ("a single-patient use pediatric flat bag mask PEEP PBMV, lot number 7141147, manufactured and sold by Nellcor") that Plaintiff claims caused H.P.'s serious injuries and who had physical possession of it at the time. It is beyond a simple judge's understanding why a product manufacturer would wait approximately 18 months after it had been sued for

- 6 -

1  injuries and damages worth potentially millions of dollars before its in-house experts
2  examine its alleged defective product unless, of course, there is a motive for such delay, such
3  as, gaining a tactical advantage by deposing an adverse party's expert before disclosing its
4  own employees' expert opinions. Nellcor is attempting to undo the measured schedule
5  established to facilitate a thorough and orderly resolution of this case not for some extremely
6  busy, nationally-renowned expert over whom Nellcor has little control but for two of its own
7  employees over whom it has significant, if not total, employment control. Surely,
8  "experienced trial counsel" recognizes that at some point in litigation when cooperative
9  efforts toward discovery with adverse counsel fail and time is running short, counsel must
10 resort to the Federal Rules of Procedure and seek judicial intervention for assistance. Waiting
11 until the very last day to seek judicial approval of an extension to disclose non-retained
12 experts and their reports is clearly too late and a formula for possible disastrous
13 consequences. *Wilderness Development, LLC v. Hash*, 2009 WL 564224, * 3 (D. Mont.
14 2009) ("The federal courts strictly enforce the expert witness disclosure requirements in Rule
15 26(a)(2)(B), and have the discretion to impose sanctions for an untimely or inadequate expert
16 disclosure including the exclusion of expert witness testimony.") (citing *Yeti by Molly, Ltd.*
17 *v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). "Exclusion of expert
18 testimony 'is an appropriate remedy for failing to fulfill the required disclosure requirements
19 of Rule 26(a).'" *Id.* "Rule 37(c)(1) gives teeth to [the disclosure] requirements by forbidding
20 the use at trial of any information required to be disclosed by Rule 26(a) that is not properly
21 disclosed.[2]" *Yeti by Molly*, 259 F.3d at 1106.

---

[2] Federal Rule of Civil Procedure 37(c)(1) provides in part:

> 1) **Failure to Disclose or Supplement**. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

28 Rule 37(c)(1), Fed.R.Civ.P.

1  If sufficiently motivated to discover this case, the length of time provided to
2 Nellcor's counsel in the scheduling order to, for example, schedule an examination of the
3 alleged defective product was more than reasonably adequate if diligence were exercised
4 with the slightest amount of planning. If the Court were to grant both Nellcor's and
5 Plaintiffs' requested extensions, it would result in a serious disruption of the August 24, 2010
6 scheduling order and the orderly resolution of this case or reduce an important case
7 management order into a nullity. Nellcor has not demonstrated that the Rule 16 pretrial
8 schedule "cannot reasonably be met despite diligence" by Nellcor. *Johnson*, 975 F.2d at 608.
9 Like other deadlines set forth in the federal civil rules, to hold that good cause has been
10 shown here "would allow the good cause exception to swallow the rule." *Townsel v. County*
11 *of Contra Costa*, 820 F.2d 319, 320 (9th Cir. 1987). Plaintiffs appear to have fully complied
12 with the scheduling order's January 7, 2011 expert disclosure deadline. Fundamental fairness
13 and impartiality demand nothing less from Nellcor.
14  Accordingly,
15  **IT IS ORDERED** that Defendant Nellcor Puritan Bennett, LLC's Motion for
16 Extension of Time to Serve Reports for Non-Retained Expert Witnesses, doc. 38, is
17 **DENIED**.
18  **IT IS FURTHER ORDERED** that, except as set forth herein, all pleadings,
19 motions, memoranda, or other filings in this case shall be created via personal computer with
20 a word processing application, e.g., Microsoft Word® or Corel WordPerfect®, then
21 converted to portable document format (.pdf). See, definition of ".pdf," ECF Manual, at
22 I(A), p. 2. ("[E]lectronic documents must be converted to .pdf directly from a word
23 processing program (e.g., Microsoft Word® or Corel WordPerfect®) and must be text
24 searchable."). Such filings shall not be printed to paper and then scanned and saved as
25 portable document format (.pdf). Documents which exist only in paper form, like exhibits
26 or certain attachments to pleadings may, however, be scanned from a paper copy and saved
27 / / /
28 / / /

1  in a portable document format (.pdf). Future violations of this or other Local Rules may
2  result in the striking of the non-conforming motion, brief or other document.
3  Dated this 21st day of March, 2011.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge